**People of the State of Illinois, Appellee, v. Robert L. Pruitt, a/k/a Ulysses J. Coleman, Appellant.**

**Gen. No. 51,448.**

First District, Fourth Division.

January 15, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Brian Crowe and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED
 Murder.

JUDGMENT
 After a bench trial the court found defendant guilty and sentenced him to a term of 14 to 25 years.

CONTENTION ON APPEAL *
 Defendant was not proven guilty.

---

\* The appeal was taken to the Supreme Court which transferred the case here.

EVIDENCE FOR THE STATE

At about 7:45 p. m. on April 26, 1963, Reverend James Siler and several members of his church choir were sitting in an automobile at 5924 S. Prairie Avenue, Chicago. Reverend Siler heard a gunshot which at first he thought was a firecracker. Then he saw two men running, one chasing the other, in the gangway alongside a building on the opposite side of the street. There was another shot as the first man was opening the gate at 5939 S. Prairie, and he fell backward onto his head on the public sidewalk. This was practically straight across the street from where Reverend Siler and the others were sitting in the parked car. At that juncture Reverend Siler saw "this other gentleman" walk between the legs of the man who was "flat on his back" on the sidewalk and start "firing away." He saw the fire from the gun. The man with the gun then lit a cigarette, walked maybe 50 feet, looked around a couple of times, and began to run. It was just beginning to get dark, but Reverend Siler didn't know for sure whether the streetlights were on. The only voice which he heard was that of "the first gentleman" who grunted when he hit the ground upon first being shot.

Anthony Lewis, age 16, was one of the ones in the car with his mother and Reverend Siler. He heard two shots, saw a man running, and then heard at least three more shots. He remembered it as "pretty dark out" and the streetlights were on.

In response to a radio call at about 8:00 p. m. that evening, Police Officer Robert Crowley found William Dudley lying on his back on the sidewalk in front of 5939 S. Prairie. His body bore multiple bullet wounds, and he was dead.

The findings of the Coroner's physician, which were admitted into evidence by stipulation, showed ten bullet wounds, with the notation that two wounds in the hands might have been caused by some of the bullets which had

entered the chest or abdomen from the front. There were also entrance wounds in the back of the hips and legs, caused by bullets which had shattered both thigh bones.

Defendant was apprehended in New York, and the gun which was taken from him at that time was introduced into evidence. Also in evidence was a signed statement by defendant which was made on January 8, 1964, after his extradition from New York. This statement was generally consistent with the testimony which defendant gave at trial.

### EVIDENCE FOR THE DEFENSE

The only evidence for the defense was the testimony of defendant in his own behalf. He testified that he had known decedent for about a year; that they had lived together as "lovers." Continuing with his testimony, on the day in question they had been drinking gin together when decedent asked for money. Although he had given him money many times before, defendant refused. In reaching for their bottle of gin which decedent was carrying, defendant felt the gun in decedent's pocket and asked for it. At this, decedent started to hit defendant with the pistol on the side of the head. Defendant threw gin in decedent's eyes, and while the latter was wiping his eyes defendant knocked the pistol from his hand. They then struggled with each other for the pistol. Defendant's testimony concluded: "Dudley was on the ground with me when I picked up the gun. He was rolling around. Then I shot him, sir. As far as I can remember, I stood up over his body and shot him over his body." In the signed statement, defendant said he had shot nine times and that decedent had not fallen to the ground until the seventh or eighth shot. The gun was a .22 revolver belonging to decedent, but he had kept it at defendant's house.

OPINION

Defendant says that the evidence left a reasonable doubt as to his guilt. But it didn't.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.

